SCANNED

SCANNED

FILED

MAR 20 2019

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Criminal No. 19-55 |
| | ) | (18 U.S.C. § 1349) |
| LANCELOT DE MONTSEGUR | ) | |
| aka PATRICE BERTHOME | ) | |
| STEVEN JULIVER | ) | |

## SUPERSEDING INDICTMENT

### COUNT ONE

The grand jury charges:

1. From in and around 2016, and continuing thereafter to in and around February 2019, in the Western District of Pennsylvania and elsewhere, the defendants, LANCELOT DE MONTSEGUR aka PATRICE BERTHOME, STEVEN JULIVER, and other individuals and entities known and unknown to the grand jury, engaged in a conspiracy to violate the following laws of the United States:

    a. Mail Fraud, in violation of 18 U.S.C. § 1341;

    b. Wire Fraud, in violation of 18 U.S.C. § 1343; and

    c. Bank Fraud, in violation of 18 U.S.C. § 1344(2).

### INTRODUCTION

At all material times:

2. There were various entities involved in the processing of credit card payments, including credit card issuers, credit card acquirers or processors, companies that operated credit card networks, and companies that operated gateways (collectively "Credit Card Companies") that had policies that precluded the use of their products and services for the sale of recreational and

designer drugs, kratom, CBD oil, and various other illegal or high-risk activities (collectively "Precluded Activity" or "Precluded Activities").

3. The Credit Card Companies had internal controls that checked compliance with their policies in an effort to ensure that their products and services were not used for Precluded Activities, including checking websites.

4. The defendants, LANCELOT DE MONTSEGUR aka PATRICE BERTHOME and STEVEN JULIVER, were associated with entities involved in payment processing for Precluded Activities.

## MANNER AND MEANS OF THE CONSPIRACY

5. It was part of the conspiracy that conspirators, including the defendants, LANCELOT DE MONTSEGUR aka PATRICE BERTHOME and STEVEN JULIVER, subverted and caused the subversion of the policies of the Credit Card Companies and caused the Credit Card Companies to provide services and money through a series of misrepresentations designed to conceal from the Credit Card Companies the processing of credit card transactions for Precluded Activities by making it appear as though the credit card transactions were for goods and services that the Credit Card Companies' policies would permit (collectively "Permitted Activity" or "Permitted Activities").

6. It was further a part of the conspiracy that members of the conspiracy, including the defendants, LANCELOT DE MONTSEGUR aka PATRICE BERTHOME and STEVEN JULIVER, and other individuals known and unknown to the Grand Jury, established and caused the establishment of shell corporations that were not truly involved in any business.

7.      It was further a part of the conspiracy that members of the conspiracy, including the defendants, LANCELOT DE MONTSEGUR aka PATRICE BERTHOME and STEVEN JULIVER, and other individuals known and unknown to the Grand Jury, established and caused the establishment of internet websites associated with the shell corporations that advertised a Permitted Activity or Permitted Activities.

8.      It was further a part of the conspiracy that members of the conspiracy, including the defendants, LANCELOT DE MONTSEGUR aka PATRICE BERTHOME and STEVEN JULIVER, and other individuals known and unknown to the Grand Jury, established and caused the establishment of bank accounts through federally insured financial institutions in the names of the shell corporations.

9.      It was further a part of the conspiracy that members of the conspiracy, including the defendants, LANCELOT DE MONTSEGUR aka PATRICE BERTHOME and STEVEN JULIVER, and other individuals known and unknown to the Grand Jury, applied for and caused the submission of applications for PayPal, Square, and Stripe accounts and merchant accounts from Credit Card Companies, falsely claiming that the shell corporations would process payments for Permitted Activities through the associated websites.

10.     It was further a part of the conspiracy that members of the conspiracy, including the defendants, LANCELOT DE MONTSEGUR, aka PATRICE BERTHOME, and STEVEN JULIVER, and other individuals known and unknown to the Grand Jury, when sales of Precluded Activities were made through the PayPal, Square, Stripe, and merchant accounts, caused the company names associated with the sales to be the shell corporations, rather than the actual entities

selling the Precluded Activities, to conceal the true nature of the transactions and the businesses involved.

11. It was further a part of the conspiracy that members of the conspiracy, including the defendants, LANCELOT DE MONTSEGUR aka PATRICE BERTHOME and STEVEN JULIVER, and other individuals known and unknown to the Grand Jury, caused the credit card statements provided to the consumers to include telephone numbers related to the sale for inquiries by customers.

12. It was further a part of the conspiracy that members of the conspiracy, including the defendants, LANCELOT DE MONTSEGUR aka PATRICE BERTHOME and STEVEN JULIVER, and other individuals known and unknown to the Grand Jury, established and caused the establishment of telephone banks that the customers called for inquiries, and individuals known and unknown to the Grand Jury explained to the customers the true nature of the transactions, namely Precluded Activities, with the intent of stopping the customers from seeking refunds for the purchases or otherwise reporting the activity to the Credit Card Companies.

13. It was further a part of the conspiracy that members of the conspiracy, including the defendants, LANCELOT DE MONTSEGUR aka PATRICE BERTHOME and STEVEN JULIVER, and other individuals known and unknown to the Grand Jury, if the Precluded Activities sales were successfully processed, received payments from the Credit Card Companies that were deposited into the bank accounts associated with the shell corporations.

14. It was further a part of the conspiracy that members of the conspiracy, including the defendants, LANCELOT DE MONTSEGUR aka PATRICE BERTHOME and STEVEN JULIVER, and other individuals known and unknown to the Grand Jury, caused payments received

through the conspiracy to be paid to the organizations and individuals associated with the fraudulent credit card processing and to the entities associated with the Precluded Activities.

15. It was further a part of the conspiracy that members of the conspiracy, including the defendants, LANCELOT DE MONTSEGUR aka PATRICE BERTHOME and STEVEN JULIVER, and other individuals known and unknown to the Grand Jury, used the interstate wires to, among other things, communicate among themselves, with the Credit Card Companies, and with consumers, and to make and receive payments.

16. It was further a part of the conspiracy that members of the conspiracy used the United States mail and interstate commercial carriers to, among other things, send the products purchased through the methodology described above and make and receive payments.

17. It was further a part of the conspiracy that many of the Credit Card Companies were federally insured financial institutions or wholly owned subsidiaries of federally insured financial institutions.

18. It was further a part of the conspiracy that much of the money ultimately involved in the fraudulent transactions flowed through accounts of federally insured financial institutions.

All in violation of Title 18, United States Code, Section 1349.

## CRIMINAL FORFEITURE ALLEGATION

19. The United States hereby gives notice to the defendants charged in Count One that, upon their conviction of such offense, the government will seek forfeiture in accordance with Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(2) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property constituting or derived from proceeds obtained directly or indirectly as a result of such offense, including but not limited to the following:

(a) MONEY JUDGMENT

A sum of money equal to at least approximately $1,000,000.00 in United States currency

(b) SPECIFIC PROPERTY

- $68,453.18 from Dailie LLC, Wells Fargo account 2717 (CATS # 19-FDA-000084)
- $5,000 from Vouchera LLC, Wells Fargo account 7337 (CATS # 19-FDA-000088)
- $31,248.60 from Vouchera LLC, Wells Fargo account 2892 (CATS # 19-FDA-000087)
- $65,099.63 from Vouchera LLC, Wells Fargo account 4061 (CATS # 19-FDA-000086)
- $289,004.85 from Elvi LLC, Wells Fargo account 1471 (CATS # 19-FDA-000083)
- $113,291.30 from Gabriel W Cristello Irrevocable & Steven Juliver TTE, Wells Fargo account 8105 (CATS # 19-FDA-000082)
- $150,756.77 from Gabriel W Cristello Irrevocable & Steven Juliver TTE, Well Fargo account 0962 (CATS # 19-FDA-000085)
- $137,767.31 from Deusxmachina LLC, TD bank account 2083
- $6,527.31 from Jadawin LLC, Banco Popular De Puerto Rico account 0820

20. If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

6

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

A True Bill,

_____
Foreperson

_____
SCOTT W. BRADY
United States Attorney
PA ID No. 88352