IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 19-55 |
| | ) | (18 U.S.C. § 1349) |
| LANCELOT DE MONTSEGUR | ) | |
| aka PATRICE BERTHOME | ) | [UNDER SEAL] |

### INDICTMENT

### COUNT ONE

The grand jury charges:

1. From in and around 2016, and continuing thereafter to in and around February 2019, in the Western District of Pennsylvania and elsewhere, the defendant, LANCELOT DE MONTSEGUR, and other individuals and entities known and unknown to the grand jury, engaged in a conspiracy to violate the following laws of the United States:

   a. Mail Fraud, in violation of 18 U.S.C. § 1341;

   b. Wire Fraud, in violation of 18 U.S.C. § 1343; and

   c. Bank Fraud, in violation of 18 U.S.C. § 1344(2).

### INTRODUCTION

At all material times:

2. There were various entities involved in the processing of credit card payments, including credit card issuers, credit card acquirers or processors, companies that operated credit card networks, and companies that operated gateways (collectively "Credit Card Companies") that had policies that precluded the use of their products and services for the sale of recreational and designer drugs, kratom, CBD oil, and various other illegal or high-risk activities (collectively "Precluded Activity" or "Precluded Activities").

3. The Credit Card Companies had internal controls that checked compliance with their policies in an effort to ensure that their products and services were not used for Precluded Activities, including checking web sites.

4. The defendant, LANCELOT DE MONTSEGUR, was associated with entities involved in payment processing for Precluded Activities.

## MANNER AND MEANS OF THE CONSPIRACY

5. It was part of the conspiracy that conspirators, including the defendant, LANCELOT DE MONTSEGUR, subverted and caused the subversion of the policies of the Credit Card Companies and caused the Credit Card Companies to provide services and money through a series of misrepresentations designed to conceal from the Credit Card Companies the processing of credit card transactions for Precluded Activities by making it appear as though the credit card transactions were for goods and services that the Credit Card Companies' policies would permit (collectively "Permitted Activity" or "Permitted Activities").

6. It was further part of the conspiracy that members of the conspiracy, including the defendant, LANCELOT DE MONTSEGUR, established and caused the establishment of shell corporations that were not truly involved in any business.

7. It was further part of the conspiracy that members of the conspiracy, including the defendant, LANCELOT DE MONTSEGUR, established and caused the establishment of internet web sites associated with the shell corporations that advertised a Permitted Activity or Permitted Activities.

8. It was further a part of the conspiracy that members of the conspiracy, including the defendant, LANCELOT DE MONTSEGUR, established and caused the establishment of bank accounts through federally insured financial institutions in the names of the shell corporations.

9. It was further a part of the conspiracy that members of the conspiracy, including the defendant, LANCELOT DE MONTSEGUR, applied and caused the submission of applications for PayPal, Square, and Stripe accounts and merchant accounts from Credit Card Companies, falsely claiming that the shell corporations would process payments for Permitted Activities through the associated web sites.

10. It was further a part of the conspiracy that members of the conspiracy, including the defendant, LANCELOT DE MONTSEGUR, when sales of Precluded Activities were made through the PayPal, Square, Stripe, and merchant accounts, caused the company names associated with the sales to be the shell corporations, rather than the actual entities selling the products, to conceal the true nature of the transactions and the business involved.

11. It was further a part of the conspiracy that members of the conspiracy, including the defendant, LANCELOT DE MONTSEGUR, caused the credit card statements provided to the consumers to include telephone numbers related to the sale for inquiries by customers.

12. It was further a part of the conspiracy that members of the conspiracy, including the defendant, LANCELOT DE MONTSEGUR, established and caused the establishment of telephone banks that the customers called for inquiries, and members of the conspiracy explained to the customers the true nature of the transactions, namely Precluded Activities, with the intent of stopping the customers from seeking refunds for the purchases or otherwise reporting the activity to the Credit Card Companies.

13. It was further a part of the conspiracy that members of the conspiracy, including the defendant, LANCELOT DE MONTSEGUR, if the sales were successfully processed, received payments from the Credit Card Companies that were deposited into the bank accounts associated with the shell corporations.

14. It was further a part of the conspiracy that members of the conspiracy, including the defendant, LANCELOT DE MONTSEGUR, caused payments received through the conspiracy to be paid to the organizations and individuals associated with the fraudulent credit card processing and to the entities associated with the Precluded Activities.

15. It was further a part of the conspiracy that members of the conspiracy, including the defendant, LANCELOT DE MONTSEGUR, used the interstate wires to, among other things, communicate among themselves, with the Credit Card Companies, and with consumers, and to make and receive payments.

16. It was further a part of the conspiracy that members of the conspiracy used the United States mail and interstate commercial carriers to, among other things, send the products purchased through the methodology described above and make and receive payments.

17. It was further a part of the conspiracy that many of the Credit Card Companies were federally insured financial institutions or wholly owned subsidiaries of federally insured financial institutions.

18. It was further a part of the conspiracy that much of the money ultimately involved in the fraudulent transactions flowed through accounts of federally insured financial institutions.

All in violation of Title 18, United States Code, Section 1349.

A True Bill,

*[signature]*
Foreperson

*[signature]*
SCOTT W. BRADY
United States Attorney
PA ID No. 88352

4